Thank you Our last case today will be American General Life Insurance Company versus Lisa Maharajh Mr. Beahm here? Great. Mr. Beahm, we are ready for you. You've got 10 minutes. Good morning, Your Honor. May it please the court. I'm Michael Beahm and I represent Lisa Maharajh in this appeal. The district court in granting summary judgment on behalf of OHM in this case erred in two primary ways. One, the court stated an incorrect standard for strict compliance with changing a beneficiary of an insurance policy in Florida. And two, because of that, it unfairly held that standard to Devanand Maharajh in his attempt to change the beneficiary under his policy. And so I want to address those two issues today. The standard for strict compliance in Florida is that the policy controls changing a beneficiary. This dates back to 1911. The Supreme Court of Florida in Shepard v. Crowley discussed this issue and said that Florida is going to follow a contract type standard rather than an equitable standard. The court did say that they did not think that the facts before it were controlled by a situation where the policyholder has done all he can to effectuate the change of beneficiary and all that remains to be done is some ministerial act on the part of the insurance company, such as putting the beneficiary change in a file cabinet or something like that. It's my example. But they clearly adopted a contract-based standard in Florida and it's been that way ever since. What's the relevance of the time frame between the company's request for information and nothing happens? Is it relevant? It is not relevant, Your Honor. Not at all? It is not relevant where the policy says, and again, the policy language controls. If the policy says... Your argument is the policy eliminated all that as evidence. In this case it did because it said that when the company records the beneficiary change, that change will date back to when it was signed. In fact, there was a case that was cited by Lisa where the beneficiary change was submitted to the insurance company and eight years passed before the owner of the policy died. And in that case, the court held that because the change had complied with the terms of the policy, it was given in writing, it was signed by the insured, and it was submitted to the insurance company. Is it possible for the same person to be both a primary and a contingent beneficiary of a policy? Well, Your Honor, I gave an example to the trial court where a person in purchasing a policy may say, I want my spouse to be the primary beneficiary, as in this case, and I want my daughter, as in this case, from a first marriage to be a co-beneficiary, a primary beneficiary. Different percentages, but a primary beneficiary. However, if my wife and I die of a common disaster, my child's left, and like Lisa, if my wife has a child from a prior relationship, the children are left. And so an insured, especially whereas here, the insurance policy does not even discuss contingent beneficiaries. Nowhere in this policy does it distinguish between primary and contingent beneficiaries. And so the insured is left on their own to figure out how they want to distribute their estates or their benefits. Counsel, I'm sorry, I don't understand you to be answering Judge Grant's question. Yes or no, can under the policy, under Florida law, under whatever standard governs or whatever the controlling document is, can someone effectively be listed both as a primary and a contingent? I can't give the court an example where I can say, yes, it definitely occurs. However, there's no prohibition in this policy, and I'm not aware of any prohibition in Florida law to that situation. Your answer is I don't know. So they could. The answer is I don't know, but I gave an example as to how that might come about. I guess we can ask American General. To the extent that there is a could or an I don't know, and a policyholder hears back from the insurance company that that attempt doesn't work, why should the policyholder be able to just sit on that rather than have the responsibility to work it out? Why wouldn't we assume that absent further communications, the policyholder wished to keep the designations as they had been before? Well, because they had submitted it in the first instance, and that was a statement of their intent at the time. They declared an intent to change the beneficiary to these persons. Now, if the insurance company reaches out with a request for additional information, it depends on the character of the beneficiary change submission. For example, there's cases that I've cited where a company suspected that there was a fraudulently submitted beneficiary form. Obviously, the company has the right to inquire as to whether or not it's legitimate. In other cases, there's questions about whether or not the person submitting the request is actually the owner of the policy because it's the owner or the insured who retains the right to change the beneficiary. If their status is in question, then the insurance company may reach out and inquire. However, if there is no such question regarding the policy-specific criteria for submitting a benefit change, then the insurance company can ask all they want. The policyholder is not under a duty to respond to requests for additional information that is not required specifically by the policy. What if it's not clear that the thing the person is trying to do is lawful? What if it's not clear that someone can be both a primary and a contingent beneficiary? Well, one thing that could be done would be, as was done in the McLaughlin case, which was actually cited by the Applees, where the insurance company did a very good job of laying out in its policy, specifically the relationship between primary and contingent beneficiaries, how they were to be designated and what percentages they could take in, and also other things that were not present in the American general policy, which would have been very helpful in this instance. I'm sorry, counsel. What case did you say that was? McLaughlin. Your Honor, that is Great American Life Insurance v. McLaughlin. That's out of the Southern District, 2013. Yeah. That was a different policy then. And that's a case where, again, this is one of several cases that cites LOGIS, as the trial court did, for the improper standard in Florida. However, in that case, they actually reached the right result because you didn't have to take that extra step. You could actually discount the beneficiary change just based on strict policy construction, as would have been proper. So in that case, they applied the wrong standard, but they reached the right result. Since the policy controls, that's the only thing that can be looked at. The letter from American general is not part of the policy. In fact, the beneficiary form is not part of the policy. The policy doesn't require a form at all. It just says written notice to change the beneficiary. And so, as long as the insured provides sufficient information to identify the beneficiaries, and it's otherwise submitted in compliance with the policy terms, it should be accepted. And it should be established as of the date that the insured signs it. The policy provision in this case is only one paragraph. It's very brief. It just says that during the time that this policy is in force, the owner may change a beneficiary by submitting a written request to us, and it will take effect upon recording, and it will be retroactive to the date that it was signed. What if he had said on the form, I'd like to change the beneficiary to my next-door neighbor? That's insufficient. I mean, we know you could check records and see who his next-door neighbor had been at the time and really figure out that that's what he wanted to do. I think that there needs to be a little bit more than that. As this case, the beneficiaries were named by their names, their social security numbers were provided, their dates of birth, their relationships to the insured. Not the relationship of the second contingent beneficiary, right? That's correct. However, as it turns out, because American General never really rejected the form, if we examine their letter to the decedent, it doesn't say we reject your beneficiary change. It says we cannot continue processing it until... Let me quote the exact language. I think actually your time is up, so we'll hear from you for five minutes on rebuttal. Mr. Hoover. Thank you, Your Honor. Michael Hoover on behalf of Interpreter Law for the OHM, the minor child. I think there's two reasons why the trial court's decision was correct and should be affirmed. First, the insured did not satisfy Florida strict compliance doctrine. It applies to all beneficiary change requests. And second, to address your point, Judge Joflat, his inaction for more than 10 years is a problem because after the attempt was rejected, he did not do anything that would even satisfy the substantial compliance doctrine, which applies in a lot of the other states, so much less the strict compliance standard. So strict compliance in Florida means that an insured has taken all steps, everything that he can do within his power, and the only thing that remains is a ministerial duty on behalf of the insurance company to do something, like record the change, record an address change. In this, I think this is key, ministerial duty requires no discretion. So if I send in a change of beneficiary form and I say 100% beneficiary, the form is completely filled out correctly, the insurance company doesn't have anything to argue with. Everything is done properly. That's a ministerial duty. If I submit a change of address request, unless I say something absurd like my address is the North Pole, care of Santa, or something ridiculous, they have a duty to record that form because I've given them no reason to challenge it.  It wasn't just that the primary and contingent beneficiaries were listed as the same people, which, to answer your question, Judge Grant, is never proper. It's never okay. That's probably, I would say, number one reason that beneficiary requests get rejected. Is that something that regularly is requested and is rejected? I'll give you a yes to answer your question. I mean, I can understand, regardless of whether he could make that happen here, I can understand wanting to provide more for your wife than for your child as a primary, but also to provide for your child, maybe give your child a bigger piece of the pie if your wife has already passed. That's something that makes sense in a way. I don't dispute what his intent was. I mean, I think his intent was to name his wife as a beneficiary. The problem is that it was rejected, and to my second point, it's the 10 years of inaction that's the real problem in this case. So would it have been enough? Go ahead. I was following up on your question, but how does one do what Judge Grant is asking about? If the policyholder wants the wife to get 75% and the daughter to get 25%, but if the wife predeceases the policyholder, he wants the daughter to get 50% and a niece to get the other 50%. How do you do that? With this, you can't be both a contingent and a primary. No, you would have to have done the beneficiary designations differently to accomplish that. I'm sorry. Go ahead. It's impossible. Tell us now. It's impossible because if a primary beneficiary has died, they can't be a contingent. You mean to tell me the policyholder who pays for a million-dollar life insurance policy can't conceivably say the commonsensical occurring in human nature, I want my daughter to get this if my wife is still around. Otherwise, she gets more. You can't say that on this policy? I misspoke. You're absolutely right. You can do that. What you would have to do is a special beneficiary designation where you write that out. I'm sorry. There's nowhere on the form to write that out. That's why I'm saying you would have to write a letter to the insurance company explaining here's exactly what I want to happen. If my wife survives me, she gets 75 and my child gets 25. However, if my wife predeceases me, my child is no longer the primary beneficiary. The two contingents would split it. How is the policyholder supposed to know that? I don't think it's possible for the policyholder to know that unless they contact their agent or contact their company. I mean, I know that because I'm a life insurance lawyer, but the average person doesn't understand that. Yeah, it's obvious from your brief. You have expertise and experience in this field. That's why we're asking you and we'll ask Jim that, too. But it just seems to me. Your Honor, I'll give you another example. I see this all the time. Someone will submit a beneficiary change form that has three primary beneficiaries, and it will say 33, 33, 33. And the insurance company will reject it, saying that doesn't add up to 100%. And the form is never recorded. The change is never made. You and I both know what the person wanted, but there's no legal mechanism to enforce that because it doesn't technically add up to 100%. Let me ask you this. If Lisa had pre-deceased, David, in this case, would the child get 100%? If the 2009 form had been recorded, yes. Because when a primary pre-deceases, and this is typical for most policies, not all, but for most policies, the rule is that it's a class of beneficiary. So if you have two listed, one at 75, one at 25, and the 75% dies, then the 25 steps up to 100. And that's in the policy? That's typically in the policy. I'd have to double check this one to see if it's in there. But a lot of them will explain that if sometimes it's done on the beneficiary change form itself, sometimes it's in the policy. I don't think that's in this policy now that I think about it. Is it also typical for an insurance company to send one letter and say we can't make that change until you resolve this and then ignore that there's been a problem and an unfulfilled request for 10 years?  Because they don't have to. They don't have to. Like the old Lily Tomlin sketch where she says I'm here from the utility company. We don't care. We don't have to. That's exactly right. I mean, I love to beat up on the insurance companies all I can. This is what I do with insurance companies. But in this case, I actually think they got it right. Would they have been justified in rejecting the form only for its omission of the relationship between the other contingent beneficiary? I think that's really tacky. I mean, they could do it. I would argue I would be happy to be a plaintiff in that case because I think that's really ridiculous. But I'm almost out of time, and so I do want to touch on this. This is what I think is the real problem in this case. All these examples and things that we've discussed are a problem because of the 10 years that went by. In the 10 years of inaction, how do we know what he wanted? How do we know he never looked up online and said, oh, you know what? My daughter's still the beneficiary. I'm just going to leave this alone. I've changed my mind. And I think that's the real challenge in this case is that 10 years, and there's actually a case out of Florida, very similar circumstance where the court said, look, nine years of not checking to see if this went through is too long. Thank you. Thank you. Mr. Donahue for American General Life Insurance. Please, the court. I'm David Donahue from Bressler, Amory & Ross in Birmingham, here for American General Life Insurance Company. As this case came about, it's an interpleader, and so the American general doesn't have an interest in sort of which of these claimants prevails and who's ultimately entitled to the disputed funds. Our interest is sort of limited to how the court's interpretation of the beneficiary language affects the company's ability to apply objectively reasonable standards when processing beneficiary change requests. We believe that the court below interpreted the provision correctly and that it preserves a reasonable amount of discretion on the insurer's part to correct, to ask for clarification, correct any mistakes, and make sure that, one, we can discern what the intent of the owner was, and also just to make sure that it's not creating obvious problems down the road. Like, for example, You're here because the company wants as much discretion as possible to do what it wants to do in these situations, right? Well, we're not a utility Lily Tomlin sort of situation, but we need to have reasonable discretion to avoid situations like that. The reason you're here is you don't want less discretion. You want as much as you can possibly get. I would agree with that. Yeah, doesn't everybody. But my question to you is that seems somewhat inconsistent with the we'll send you one notice. We hope you get it. But if you don't, we'll presume you got it. And so will the courts. And that's your problem. See, the whole case, you send them one. You send him one saying there's a problem. Correct this problem. You don't hear from him for 10 years, 5 months, whatever it was. And you never the computer doesn't tick after 6 months or a year to send him another. Hey, by the way, we haven't heard from you. Did you get our 1st letter? That's a simple thing for a software program to do, but y'all didn't even do that. And let me tell you, my concern is heightened by the fact that the postal service is basically issued a statement telling Americans not to depend on the reliability of the mail. Particularly if they send something with a check in. Because people are stealing inside the postal service outside the postal service mail. And you don't know when you send something to a policy holder. That some thief doesn't think this from the insurance company is policy, probably a policy payment check. I better steal that envelope, take it to some location, open it up. And if there's a check in it, I can wash that check. And if it's not a check in and I can throw it away. What justification do you have for 1 notification? And then not sending another after you don't hear anything. Well, I guess it's 2 for 1 is that it's different from a claim situation that has to get resolved 1 way or the other. So if you don't hear from an insured or a beneficiary in that situation, it's common to keep contacting them. There are also things in place. You know, a lot of times if something gets misdirected, it comes back to the company. And so they know there's a problem with the mail. You're a thief who's rife. Counselor, you're a thief who's rifling through the mail, which the post office says is happening with increasing frequency. It doesn't come back to you. Well, to me, it would 1, I'm not aware of any requirement that repeat notices for. I'm asking why you is a corporation. I'm asking your client is a corporation that supposedly cares about policy. Doesn't have a policy. Different meaning of sending repeat requests. Honestly, I cannot answer why they don't have a policy in place for sending follow up letters on beneficiary changes that have been rejected. I know they send letters and other situations, and they send checks by overnight mail. A lot of times that can be tracked. But something you mentioned to them, you know, you don't have an obligation to let me ask you another question. Is it true that if you have 2 primaries and 1 does predecessors, the policy older 100% that primaries. Flame goes to the other primary after the death of policy. That's certainly the most common outcome in this case. The policy does not specifically say what happens to a class of beneficiary if one of them predecessors the insured. All it says is that if all beneficiaries predecessors the insured, then the death benefit will be paid to the owner's estate. Now, then in those cases, you look to the particular state court law on how these types of things are interpreted. And a lot of times that just depends on the state and the particular language that's in the policy. I don't understand why the policy wouldn't specify that, but you're telling us it doesn't. The reason I ask is that bears into whether you can have a primary and a contingent beneficiary. Same person. In other words, it I don't understand why. And where that is absolutely forbidden because the situation judge grant asked about is an obvious. I want my wife to get 75 percent, my child to get 25. But if my wife predecessors me, I want my child to get, in this case, 78 and a half percent by making her a 50 50 contingent. And the primaries goes to the contingent. The deceased primary goes to the contingent. Well, why? Why shouldn't that be allowed? My time has expired. Oh, yeah, but mine hasn't. Well, it's not that it's not allowed strictly. It was more a question of it's unclear what the intent was. Here, I mean, logically, without an explanation like you provided, it doesn't make sense that the same person is can be contingent and primary. So that was what needed to be clarified. Now, maybe they used imprecise language, but it's possible. But without that clarification, it's just unclear what the intent was. But you didn't ask David to clarify his intent. You said until these items have been resolved, separate parties should be assigned for primary contingent beneficiary. Not do you want to have the same party as the primary and contingent beneficiary? Well, I think a reasonable response, if someone wanted that particular situation, would be to tell the insurance company what it is that they want. Yeah, but you didn't ask them what you said. You said they should assign separate parties. You told them basically you can't do this. That's true. The language probably could have been more precise. But it was certainly, you know, the threshold issue was that normally you don't see and don't allow something that would be illogical to be recorded as a beneficiary designation. But it's not. Well, I don't want to continue. I just kept thinking if this is how y'all treat million dollar policy holders, how do you treat fifty thousand dollar policy holders? I mean, this is. I don't I know you're here representing and you've given some helpful answers, but this is this is. This is a case we'll have to decide. Thank you. Thank you, Mr. Beam. You've got five minutes. And Judge Carnes, I can assure you that American general was more than happy to cash those premium checks from the decedent as they came in because it's admitted that he paid every premium that was due until the day he died. They just didn't spend any of it on a phone call or a stamp. Not only did he pay them, but he paid them out of a joint check with his wife, which I would say would tend to show that that's who he wanted to be the beneficiary. She's giving up half her money to pay the premiums on this policy. He named her as an additional contact person after he made that beneficiary change so that they could make sure they get their bills and correspondence. Understand the strength of and reply to the strength of Jim's position, which is this is a formality, not in the terms that it's trifling, but it's a formality in the same sense. They should be arguing this as a statute of frauds. It doesn't matter what evidence you have about what the party's really intended. What counts is coverage, real estate, et cetera. What is in writing? And we have that rule because it works best in the long run for the great mass of cases, as opposed to it does private equity balances, not private specific equity balancing an individual case. That's the strength of their argument. If you're going to write it all, write it all. And they could have done a lot better job, as I said earlier, if they had written their policy like the company in McLaughlin might not be here today. Just a couple of points I'd like to make to wrap up. The letter that was sent to Devanon does not say we've rejected your request. The word reject has been used throughout this case. I've been guilty of it myself, but the letter is not a rejection. It's a pause. It says we're unable to complete your request until such time as the items below have been resolved. Those questions deal with contingent beneficiaries. I would submit that those issues were resolved the day Devanon Maharaj died because both the primaries were still living and there was no need to question contingent beneficiary intent after that. And because the policy says that the effectiveness of the change is retroactive to the date signed, once the company records it, they don't have to endorse it, just record it in their file, then that should be done today. And it's not a problem to – What inferences can you draw from the silence of the insured? Well, I have no idea. There are several, Arthur. Well? One inference is I don't really know what I want to do. That's one. That could be. Another one is I'm in a conflict on how to do all this. There's just lots of things, so I'm not going to respond. I'll let them find it out if I die. There's just all sorts of things that go through the insurer's mind. Or if he was an attorney who knew Florida law, he would have said that's not part of the policy. Which is one of the reasons why sometimes the company will ask for questions. Absolutely, absolutely. And the recording of the beneficiary change at this date, several years after the death, is not problematic because of the relation back. This court has had a case involving an ERISA policy. And that was Principal Life v. Smith back in 2010. I believe Judge Carnes was on that panel. And in that case, the insured wanted to change the beneficiary, and all it required was a written request. He went to his employer. Well, the insurance was with Principal, and his employer gave him a Humana change form, which he filled out, and which he gave to his employer. And then that wasn't submitted until after he died. And this court found that even though it's not even the same company, it had the information necessary for the insurance company to act. And it said that he was designating his death benefit to his fiance. Then that should be accepted. It's sufficient, it's correct on the terms of the policy. I apologize, my notes here. So, to summarize, Devanon did complete the beneficiary change in compliance with the policy. It was submitted according to the policy terms. Those issues that American General had had been resolved by his death. Ten years is not an unduly long time, as I said. In the O'Brien case, it was eight years after the death that the insurance company had to accept the beneficiary change. Thank you. Thank you. We appreciate counsel's arguments, and we are adjourned until tomorrow morning. All rise.